UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| NATIONS LENDING CORPORATION<br>4 Summit Park Drive, Suite 200<br>Independence, OH 44131<br><br>*Plaintiff*,<br><br>v.<br><br>JOY STRIYLE<br>2985 Thistle Drive<br>Lake Havasu City, AZ 86403<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE<br><br>**VERIFIED COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND ALL LEGAL AND EQUITABLE REMEDIES**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff Nations Lending Corporation ("Plaintiff" or "Nations Lending"), by and through the undersigned counsel, submits this Verified Complaint against Joy Striyle ("Striyle" or "Defendant"), together with the Verification of Jeff Goshert, and states as follows:

**PARTIES**

1. Nations Lending is an Ohio corporation with its corporate headquarters located at 4 Summit Park Drive, Suite 200, Independence, OH 44131.

2. Striyle is an individual and a former Nations Lending employee who resides at 2985 Thistle Drive, Lake Havasu City, AZ 86403.

**SUBJECT MATTER JURISDICTION**

3. The Court possesses diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity of citizenship exists, and the amount of controversy alleged exceeds the sum of $75,000.00.

4. The Court possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). In this action over which the Court has original jurisdiction, the claims in this Verified Complaint are

1

so related to the claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

## FACTUAL ALLEGATIONS

5. Founded in 2003, Nations Lending is one of the fastest-growing mortgage lenders in the United States and helps families achieve their dream of homeownership.

6. Nations Lending is a national mortgage lender headquartered in the Cleveland area.

7. On January 26, 2022, Nations Lending entered into a Nations Lending Employment Agreement ("Employment Agreement") with Striyle. (See Employment Agreement, attached as Exhibit A.)

8. This Employment Agreement governed the terms and conditions of Striyle's employment as a Personal Mortgage Advisor. (See Employment Agreement, at Supplement A.)

9. As a Personal Mortgage Advisor, Striyle's job duties included:

> Position Description – Essential Functions: Employee will solicit, receive, and originate applications for the extension of credit to purchase and refinance 1-4 unit residential properties, secured by a first lien mortgage or deed of trust, and provide supporting services to consumer applicants. Loans will conform to the products offerings available from the Company. Employee will ensure exceptional customer experience by overseeing loan processing from origination to closing and providing on-going communication to customers. Employee will maintain all necessary residential Mortgage Loan Originator licenses in the state or states in which the employee is employed to function.

(Employment Agreement, at Supplement A.)

10. Pursuant to the Employment Agreement, Nations Lending provided Striyle with access to Nations Lending's "Confidential Information." (Employment Agreement, p. 3.)

11. This Confidential Information included "customer information," and other trade secrets:

> Confidential Information Defined. For purposes of this Agreement, Confidential Information includes, but is not limited to, all information not generally known to

> the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, documents, operations, services, strategies, techniques, agreements and terms of agreements, transactions, negotiations, know-how, trade secrets, applications, work-in-process, databases, compilations, technologies, records, systems, sources, supplier information, vendor information, financial information, accounting information, marketing information, pricing information, credit information, payroll information, personnel information, employee lists, reports, internal controls, security procedures, customer information or lists, buyer lists, or other information generally considered private and confidential in the industry or by any existing or prospective customer, other associated third party, or of any other person or entity that has entrusted information to the Company in confidence.

(Employment Agreement, Section 3(a).)

12. In addition to the Confidential Information, Nations Lending also agreed to provide access to "Customer Information," which was:

> "Customer Information" includes, but is not limited to, names, phone numbers, addresses, email addresses, transaction history, preferences, financial condition, pricing information, and other information identifying facts and circumstances specific to the customer and relevant to Company's services.

(Employment Agreement, Section 5(b)(ii).)

13. Because the Employment Agreement granted Striyle access to Nations Lending's proprietary information and trade secrets, Striyle's Employment Agreement included two (2) restrictive covenants that applied during the employment and for twelve (12) months following a separation from Nations Lending. (Employment Agreement, Section 5(a).)

14. First, Striyle agreed not to solicit any customers "for purposes of offering or accepting goods or services similar to or competitive with those offered by [Nations Lending]":

> The Employee agrees and covenants, for the duration of the Restricted Period, not to directly or indirectly solicit, contact, or attempt to solicit or contact, using any other form of oral, written, or electronic communication, including, but not limited to, email, regular mail, express mail, telephone, fax, instant message, or social media, including but not limited to Facebook, LinkedIn, Instagram or Twitter, or any other social media platform, whether or not in existence at the time of entering into this agreement, or meet with the Company's current, former, or prospective customers for purposes of offering or accepting goods or services similar to or

competitive with those offered by the Company. However, it will not be deemed a violation of this Agreement if the Employee merely updates the Employee's employment status without engaging in any other substantive communication, by social media or otherwise, that is prohibited by this section. This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. The Employee shall promptly provide written notice of any such order to the General Counsel of the Company.

(Employment Agreement, Section 5(b)(ii).

15. Second, Striyle agreed not to compete or otherwise engage in "the same or similar business activities as [Nations Lending]":

Because Employee will have access to proprietary information belonging to Company that would provide an unfair advantage to competition, during the period of employment Employee agrees not to, for any person, business, or entity, a) own, maintain, operate, or engage in the same or similar business activities as Company or in any business activity which competes with the Company; b) serve, advise, manage, consult with, provide services for, or be employed by any individual, firm, agency, partnership venture or corporation (including any pre-incorporated association) which engages in the same or similar business activities as the Company or competes with Company; c) undertake any efforts or activities toward forming or incorporating, financing, or commencing any competing business activity which engages in the same or similar business activities as the Company; or d) advise, serve, or consult with any person, business, or entity which is or will be undertaking efforts toward incorporating, financing, forming, or commencing any competing business or activity which engages in the same or similar business activities as the Company. During the Restricted Period, Employee agrees not to divert or refer Company customers or prospective customers to any other individual, firm, agency, partnership venture or corporation (including any pre-incorporated association) which engages in the same or similar business activities as the Company or competes with Company. If Employee's job assignment location with Company is within a branch office or retail location, then Employee agrees and covenants not to open or relocate a similar office or location within a five-mile radius of such location (the "Restricted Territory") which would engage in the business of residential mortgage lending for the duration of the Restricted Period. "Relocate" includes Employee joining an existing office location of a competitor if such office was opened at such location within the six-month period before the beginning of the Restricted Period. This Section does not restrict or impede, in any way, Employee from seeking gainful employment in the industry which does not harm Company's vital and legitimate business interests and shall not be interpreted

4

or understood as restricting or impeding, the Employee from exercising protected rights that cannot be waived by agreement.

(Employment Agreement, Section 5(b)(iii).)

16. On February 1, 2023, Nations Lending and Striyle amended Supplement B to the Employment Agreement, which was a "Compensation Statement." (See Amendment to Supplement B, attached as Exhibit B.)

17. Less than a month later, on February 27, 2023, Striyle used her Nations Lending email account to attend and participate in a virtual meeting with Sheri Hug, a recruiter for DAS Acquisition Company, LLC, which currently does business as USA Mortgage (hereinafter "USA Mortgage"). Also in attendance was Don Riggs, who is a former manager for Nations Lending and is currently a manager for USA Mortgage. (See Meeting Confirmation, attached as Exhibit C.)

18. USA Mortgage is a direct competitor of Nations Lending.

19. A week later, on March 6, 2023, USA Mortgage offered Striyle employment as a Mortgage Loan Originator. (See Employment Offer, attached as Exhibit D.)

20. As a Mortgage Loan Originator, Striyle's job duties included:

Mortgage Loan Originators are the sales arm of the business, with sole responsibility to sell and service residential mortgage loans. Mortgage Loan Originators are required to be licensed in each State in which they conduct business in accordance with State licensing guidelines. MLOs ensure accurate and efficient loan processing during all phases of the loan transaction.

(See Employment Offer.)

21. As a Mortgage Loan Originator, Striyle would report to Don Riggs, the Area Regional Manager for USA Mortgage.

22. After her meeting with USA Mortgage, Striyle proceeded to refer customers and prospective customers to USA Mortgage, even though she was employed by Nations Lending.

23. A week later, on or about March 14, 2023, Striyle received a document from USA Mortgage notifying that a prospective customer was pre-qualified for a loan in the amount of $220,000.00.  (See Pre-Qualification Notice, attached as Exhibit E.)

24. The prospective customer shown in the Pre-Qualification Notice is among the categories of individuals with whom Nations Lending customarily conducts its business.

25. The Mortgage Loan Originator who signed the Pre-Qualification Notice is an individual who works at the office of Don Riggs, who was Striyle's intended supervisor at USA Mortgage.

26. After receiving USA Mortgage's offer of employment, Striyle continued referring customers and prospective customers to USA Mortgage.

27. Striyle made an excel spreadsheet identifying all the referrals she received and how many referrals she gave throughout March 2023.   (See Referral Spreadsheet, attached as Exhibit F.)

28. Based on Striyle's Referral Spreadsheet, Striyle referred eleven (11) customers or prospective customers to USA Mortgage throughout March 2023.

29. On April 1, 2023, Striyle resigned from her employment at Nations Lending.

30. At the time Striyle resigned, Nations Lending fulfilled all its obligations as to the Employment Agreement.

31. On the same day she resigned, Striyle registered her employment with USA Mortgage.

32. Striyle's LinkedIn Page shows that she is a Mortgage Loan Originator for USA Mortgage. (See Striyle's LinkedIn Page, attached as Exhibit G.)

33. On May 4, 2023, Nations Lending sent Striyle via email and U.S. mail a Preservation Notice. (See Preservation Notice to Striyle, attached as Exhibit H.)

34. In the Preservation Notice, Nations Lending provided notice that it uncovered information showing that Striyle referred customers or prospective customers to USA Mortgage in violation of the Employment Agreement and further instructed Striyle to preserve all information relevant to Nations Lending's claims. (See Preservation Notice to Striyle.)

35. Also on May 4, 2023, Nations Lending sent USA Mortgage a Notice of Violation/Preservation Demand. (See Notice of Violation and Preservation Demand to USA Mortgage, attached as Exhibit I.)

36. In the Notice of Violation and Preservation Demand, Nations Lending provided notice that Striyle referred Nations Lending's customers and prospective customers to USA Mortgage in violation of her Employment Agreement and in coordination with at least one USA Mortgage employee.

37. Nations Lending received an email from USA Mortgage's in-house counsel requesting a list of the customers claimed by Nations Lending. Nations Lending produced the Pre-Qualification Notice and supplemented its production with approximately 300 contacts, leads, and referral sources.

**COUNT ONE**
**(Breach of Employment Agreement)**

38. Nations Lending restates the foregoing allegations as if fully rewritten herein.

39. The Employment Agreement is a binding, valid, and enforceable contract.

40. Nations Lending performed its obligations under the Employment Agreement.

41. Striyle breached Sections 5(b)(ii), 5(b)(iii), and 6(b) of the Employment Agreement.

42. As a direct and proximate result of Striyle's breach of contract, Nations Lending has suffered irreparable harm and is exposed to the risk of further irreparable harm through loss of employees, customers, loss of goodwill, and the disclosure and dilution of confidential information and trade secrets, including business methods, customer/client lists, pricing strategies, marketing strategies, and corporate strategies.

43. The potential harm to Nations Lending greatly outweighs any harm to Striyle or third parties, should the Court grant Nations Lending's request for injunctive relief.

44. Public interest is in favor of granting injunctive relief as, in doing so, the Court would be preserving and promoting the integrity and enforceability of the valid and binding Employment Agreement.

45. Pursuant to the Employment Agreement, Nations Lending is entitled to injunctive relief as prayed for in this Verified Complaint and the accompanying Motion for Temporary Restraining Order and Preliminary Injunction, without the requirement that it post a bond as a precondition to obtaining such relief.  (See Employment Agreement, Sections 5(d) and 10(e).)

46. Pursuant to the Employment Agreement, Nations Lending is entitled to recovery of all costs, fees, expenses and attorney fees from Striyle related to this action.  (See Employment Agreement, Section 5(d).)

47. As a direct and proximate result of Striyle's actions, Nations Lending has incurred damages in excess of $75,000 and is entitled to such recovery as well as injunctive relief.

### COUNT TWO
### (Violation of the Ohio Trade Secrets Act)

48. Nations Lending restates the foregoing allegations as if fully rewritten herein.

49. Nations Lending's "Confidential Information" is a trade secret.

50. Nations Lending's Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, documents, operations, services, strategies, techniques, agreements and terms of agreements, transactions, negotiations, know-how, trade secrets, applications, work-in-process, databases, compilations, technologies, records, systems, sources, supplier information, vendor information, financial information, accounting information, marketing information, pricing information, credit information, payroll information, personnel information, employee lists, reports, internal controls, security procedures, customer information or lists, buyer lists, or other information generally considered private and confidential in the industry or by any existing or prospective customer, other associated third party, or of any other person or entity that has entrusted information to the Company in confidence.

51. Striyle acquired Nations Lending's Confidential Information pursuant to a confidential relationship with Nations Lending.

52. Striyle used Nations Lending's Confidential Information without Nations Lending's authorization.

53. As a direct and proximate result of Striyle's misappropriation of Nations Lending's trade secrets, Nations Lending has suffered irreparable harm and is exposed to the risk of further irreparable harm through loss of customers, loss of goodwill, and the disclosure and dilution of confidential information, including business methods, customer/client lists, pricing strategies, marketing strategies, and corporate strategies.

54. The potential harm to Nations Lending greatly outweighs any harm to Striyle or third parties, should the Court grant Nations Lending's request for injunctive relief.

55. Public interest is in favor of granting injunctive relief as, in doing so, the Court would be protecting trade secrets under the Ohio Trade Secrets Act.

56. Pursuant to the Employment Agreement, Nations Lending is entitled to injunctive relief as prayed for in this Verified Complaint and the accompanying Motion for Temporary Restraining Order and Preliminary Injunction, without the requirement that it post a bond as a precondition to obtaining such relief. (See Employment Agreement, Sections 5(d) and 10(e).)

57. Pursuant to the Employment Agreement, Nations Lending is entitled to recovery of all costs, fees, expenses and attorney fees from Striyle related to this action. (See Employment Agreement, Section 5(d).)

58. As a direct and proximate result of Striyle's actions, Nations Lending has incurred damages in excess of $75,000 and is entitled to such recovery as well as injunctive relief.

## COUNT III
### (Violation of the Federal Defend Trade Secrets Act)

59. Nations Lending restates the foregoing allegations as if fully rewritten herein.

60. Nations Lending's "Confidential Information" is a trade secret.

61. Nations Lending's Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, documents, operations, services, strategies, techniques, agreements and terms of agreements, transactions, negotiations, know-how, trade secrets, applications, work-in-process, databases, compilations, technologies, records, systems, sources, supplier information, vendor information, financial information, accounting information, marketing information, pricing information, credit information, payroll information, personnel information, employee lists, reports, internal controls, security procedures, customer information or lists, buyer lists, or other information generally

considered private and confidential in the industry or by any existing or prospective customer, other associated third party, or of any other person or entity that has entrusted information to the Company in confidence.

62. Nations Lending's Confidential Information is related to a product or service used in, or intended for use in, interstate or foreign commerce.

63. Striyle acquired Nations Lending's Confidential Information pursuant to a confidential relationship with Nations Lending.

64. Striyle used Nations Lending's Confidential Information without Nations Lending's authorization.

65. As a direct and proximate result of Striyle's misappropriation of Nations Lending's trade secrets, Nations Lending has suffered irreparable harm and is exposed to the risk of further irreparable harm through loss of customers, loss of goodwill, and the disclosure and dilution of confidential information, including business methods, customer/client lists, pricing strategies, marketing strategies, and corporate strategies.

66. The potential harm to Nations Lending greatly outweighs any harm to Striyle or third parties, should the Court grant Nations Lending's request for injunctive relief.

67. Public interest is in favor of granting injunctive relief as, in doing so, the Court would be protecting trade secrets protected by the Ohio Trade Secrets Act.

68. Pursuant to the Employment Agreement, Nations Lending is entitled to injunctive relief as prayed for in this Verified Complaint and the accompanying Motion for Temporary Restraining Order and Preliminary Injunction, without the requirement that it post a bond as a precondition to obtaining such relief.  (See Employment Agreement, Sections 5(d) and 10(e).)

69. Pursuant to the Employment Agreement, Nations Lending is entitled to recovery of all costs, fees, expenses and attorney fees from Striyle related to this action. (See Employment Agreement, Section 5(d).)

70. As a direct and proximate result of Striyle's actions, Nations Lending has incurred damages in excess of $75,000 and is entitled to such recovery as well as injunctive relief.

## COUNT IV
### (Tortious Interference with Contracts or Business Relationships)

71. Nations Lending restates the foregoing allegations as if fully rewritten herein.

72. Striyle has solicited, or otherwise attempted to solicit, Nations Lending's customers or prospective customers with the purpose of inducing them to terminate their contractual or business relationships with Nations Lending and to form contracts or business relationships with Striyle or USA Mortgage, a company that directly competes with Nations Lending.

73. Striyle had knowledge of the Confidential Information related to Nations Lending's customers and employees.

74. Following her separation from Nations Lending, Striyle acted with the intent to induce Nations Lending's customers or prospective customers to end their contracts or business relationships with Nations Lending.

75. Striyle, without privilege or justification to do so, acted intentionally, improperly, and with actual malice, by interfering with Nations Lending's agreement(s) or business relationships with its customers.

76. As a direct and proximate result of Striyle's actions, Nations Lending has suffered and will continue to suffer injury, including but not limited to loss of customers, irreparable harm to its legitimate business interests, reputation, and goodwill, and money damages in an amount in excess of $75,000.00.

## COUNT V
### (Unjust Enrichment)

77. Nations Lending restates the foregoing allegations as if fully rewritten herein.

78. Nations Lending conferred a benefit on Striyle when Nations Lending disclosed its Confidential Information to Striyle pursuant to a confidential relationship.

79. Striyle knew that Nations Lending conferred these benefits upon her.

80. Striyle has retained these benefits in violation of the Employment Agreement, or otherwise under circumstances that are unjust to do so without payment.

81. As a direct and proximate result of Striyle's actions, Nations Lending has incurred damages in excess of $75,000 and is entitled to such recovery as well as injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Nations Lending respectfully requests that the Court enter judgment in its favor against Striyle as follows:

A. For a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against Striyle and her agents, representatives, related entities, entities doing business as, and all persons acting in aid of, conjunction with, or in concern with her, from directly or indirectly:

   1. using, disclosing, or otherwise misappropriating Nations Lending's Confidential Information and trade secrets;

   2. soliciting or attempting to solicit Nations Lending's customers, employees or vendors; and

   3. otherwise acting in violation of the Agreement and the restrictive covenants contained therein. A Motion for Temporary Restraining

       Order and Preliminary Injunction has been contemporaneously filed with this Verified Complaint.

B.    On the first Claim for Relief, Breach of Employment Agreement, for injunctive relief as requested above, and for damages in excess of $75,000.00.

C.    On the second Claim for Relief, Violation of the Ohio Trade Secrets Act, for injunctive relief as requested above, and for damages in excess of $75,000.00.

D.    On the third Claim for Relief, Violation of the Federal Defend Trade Secrets Act, for injunctive relief as requested above and for damages in excess of $75,000.00.

E.    On the fourth Claim for Relief, Tortious Interference with Contractual or Business Relations, for injunctive relief as requested above and for damages in excess of $75,000.00.

F.    On the fifth Claim for Relief, Unjust Enrichment, for injunctive relief as requested above and for damages in excess of $75,000.00.

G.    For such further relief as this Court may deem just, equitable, and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

       Respectfully submitted,

       */s/ Jeffrey C. Miller*
       Jeffrey C. Miller (0068882)
       David J. Hearty (0093827)
       Stefanik Iosue & Associates
       1109 Carnegie Avenue, Floor 2
       Cleveland, OH 44115
       (216) 651-0451
       jmiller@stefanikiosue.com
       dhearty@stefanikiosue.com
       *Attorneys for Nations Lending Corporation*

# **VERIFICATION**

STATE OF OHIO            )
COUNTY OF CUYAHOGA )

Under penalty of perjury, I, Jeff Goshert, Chief Compliance Officer for Nations Lending Corporation, declare that I am authorized to give this verification on behalf of the Plaintiff. I have read the foregoing Verified Complaint for Compensatory and Punitive Damages, Temporary Restraining Order, Preliminary and Permanent Injunction, and All Legal and Equitable Remedies, and the facts alleged therein are true and correct. I make this verification based upon my own personal knowledge of the facts involved or based on upon the books and records customarily kept and maintained by Plaintiff.

**NATIONS LENDING CORPORATION**

By: _Jeff Goshert_
Its: Chief Compliance Officer

The foregoing instrument was sworn and subscribed before me this 6th day of June, 2023, by Jeff Goshert who is the Chief Compliance Officer for Plaintiff, on or behalf of such corporation.

_Becky Cutlip_
Notary Public, State of Ohio
My commission expires:

Becky Cutlip
Resident Summit County
Notary Public, State of Ohio
My Commission Expires:    3/10/24